## ELI HOLDEN v. GEORGE M. CLARK, et al.

1. MORTGAGE; *Stipulations and Conditions; Default; Election of Mortgagee; When Debt Becomes Due.* This action is on certain negotiable promissory notes and a mortgage. The notes by their terms are to become due at different times. The defendants set up usury, and a want of consideration. The mortgage contains a covenant that the defendants shall pay all taxes "that may be levied or assessed on said premises at the time the same shall become due and payable by the laws of this state; and they will insure or cause to be insured the buildings on said premises in a responsible insurance company *to be named by the grantee;*" and in case of failure to pay said notes when they become due, or said taxes, or to insure said building "in manner aforesaid, then and at the time of such nonpayment or failure, *or either of them,* the whole sum hereby secured shall, *if the grantee so elect,* become due and payable." The notes and mortgage were dated July 14th 1873. At that time taxes were due on the land which were afterward paid by the grantee out of the money for which the notes and mortgage were given. No holder of the notes and mortgage ever named an insurance company in which to have said building insured, and the same was never insured. On August 8th 1873 the first holder of said notes and mortgage transferred the same to one H. M. Holden, and he transferred the same before maturity to the plaintiff Eli Holden. On November 1st, 1873, other taxes became due on the mortgaged premises, which taxes have never been paid. On January 14th 1874, the first note became due, which note has never been paid. On February 13th 1874, the plaintiff, Eli Holden, elected that the whole debt secured by the mortgage should become due, and gave notice accordingly. Afterward he commenced this action; *Held,* That the plaintiff must be considered as an innocent and *bona fide* purchaser of said notes and mortgage, and that he holds the same freed from all equities existing between the original payor and payee, and mortgagors and mortgagee.

2. REPLY; *Sufficiency; Waiver.* Where an action is tried in the court below as though all parties considered that the reply was sufficient to put in issue certain allegations of the answer, the case will be considered in the same way in the supreme court.

### Error from Linn District Court.

ACTION by *Holden* as plaintiff, to forclose a mortgage given by *Clark* and wife to Dean S. Kelley, to secure a note executed by *Clark* alone. The note was for $600, due in five years,

with interest-notes payable every six months. The action was commenced February 14th 1874. The defense was, an alleged partial failure of consideration, and usury. The real question was, whether *Holden* took the note and mortgage as an innocent purchaser for value before due. The material facts, and the stipulations and conditions of the mortgage are set forth in the opinion, *infra.* Trial at the October Term 1874 of the district court. Among the instructions given to the jury were the following:

"By the election of said plaintiff Eli Holden, the entire claim became due before he acquired an interest in said notes and mortgage; and if there was a failure of consideration for said notes and mortgage, he cannot recover. But whether there was a failure of consideration, is a question of fact to be determined by the jury.

"The notes and mortgage sued upon are subject to the same defense in the hands of the plaintiff that they would be if owned and in the hands of Dean S. Kelley, the payee in the notes and grantee in the mortgage."

The jury returned a verdict in favor of *Holden,* plaintiff, for $513.33. *Holden* moved for a new trial on the ground that the court erred in its instructions to the jury, and that the verdict was too small. Motion overruled, and judgment on the verdict. *Holden* now brings the case here for review.

*Dean S. Kelley,* for plaintiff:

The clause or stipulation in the mortgage, that reads, "then and at the time of such nonpayment or failure, or either of them," the grantee may elect, shows that it was the intention of the contract that the grantee might if he chose wait until several defaults occur, and then after the last exercise his option. This clause was undoubtedly inserted in view of the common-law rule, that where a party has a right upon default of the other party to choose between different courses or remedies stipulated in the contract he must exercise his option at the time of the default. (5 Wis. 206.) The plain intent of this contract is to vary that rule, and allow the party to exercise his option at any time after default.

But, to charge plaintiff with equities between Kelley and Clark, the notes must have been dishonored in the hands of H. M. Holden. Though plaintiff had actual knowledge of the dealings between Kelley and Clark, yet he would be protected, having received the paper from an innocent holder. (Edwards on Bills, 312.) The law will certainly not place him in a worse position when at best he only has constructive knowledge of them.

Again: We claim in order to charge the plaintiff with equities the notes must have been dishonored at the time he received them. (Edwards on Bills, 57.) This was evidently also the view of this court in *National Bank v. Peck*, 8 Kas. 660, upon which the ruling in this case, in the court below, was based. If not dishonored at the time of the transfer, he took them as an innocent holder. The notes were afterward dishonored in his hands. Can a note which becomes dishonored in the hands of an innocent holder be chargeable with prior equities? But it is said the notes and mortgage are one contract, and the several indorsees are required to take notice of the provisions of the mortgage, and are consequently chargeable with knowledge of transactions between the maker and payee. That they are one contract for the purposes of construction, we admit; and that the indorsees of the note are chargeable with knowledge of the terms of the mortgage, is probably the law; but would they be chargeable with the fact that Clark had failed to perform his contract? This must be the case in order to charge the indorsee with equities. That fact certainly does not appear on the face of the contract. Is the indorser required to look beyond it? We think not. (1 Black, 386; 1 Wall. 83.) It certainly would be a strange rule of law that would presume a man had not performed his contract, and upon the strength thereof require the indorsee of his commercial paper to ascertain at his peril that he had done so before his paper could be deemed clothed with the attributes ordinarily possessed by paper of that character. The defendant should at least have been required to prove that he never had paid his debts, be-

fore asking the court to reverse a rule of law so ancient and honorable to human nature as that which presumes until the contrary appears that all men perform their legal obligations. The rule above contended for would have made these notes equally dishonored in the hands of H. M. Holden, if it would not in fact render it impossible to purchase commercial paper secured by mortgage in any manner so as to become an innocent holder. But suppose plaintiff and H. M. Holden did know at the time they respectively received the notes that Clark had not paid the taxes and insurance: how does it affect the negotiability of the paper? The principle which charges an indorsee with prior equities on account of knowing certain facts is this, that the facts known are of a character to excite suspicion and put the party upon inquiry. (Edwards on Bills, 317.) What possible connection is there between the nonpayment of the taxes or insurance, and the consideration of the notes? Would the knowledge of these facts be any augury of the rates of interest charged, or excite any suspicion as to whether it was legal or illegal? Might they not exist the same had the loan been at seven instead of seventeen per cent? The payment of taxes and insurance were acts to be performed after the execution of the papers, and could have no possible connection with the consideration for which they were given. Suppose a negotiable corporation bond, payable in ten years, may by its terms be elected due if the obligor fail to pay certain prior bonds which are past due, or fail to pay insurance on a portion of its property: will the fact that the purchaser of the bond knew that the prior debt or insurance had not been paid excite any suspicion as to the legality or illegality of the original transaction? If so, and the purchaser by reason thereof is chargeable with equities, then it is in the power of the maker of negotiable paper of this character to render it *nonnegotiable by his own wrong*, by simply refusing to perform his contract.

The notes then were not dishonored and not subject to prior equities when plaintiff received them. The first note was

actually dishonored by nonpayment on the 14th of January 1874, and yet the remaining ten notes were not. They were all negotiable notes, and not due on the 12th of February 1874. On the 13th of February plaintiff elects to have them due by reason of the failure to pay the first — and the district court held that in doing so he actually made them all due at the time of their inception, and thus dishonored the first note a second time! It was an honorable note on the 14th of January; dishonored by nonpayment on the 15th, and again dishonored *ab initio* on the 13th of February by a mere stroke of an ordinary quill! If the law-merchant is to be determined by such "now you see it, and now you don't see it" legerdemain, the sooner it is determined the better for the commercial interest of the state.

The theory of the law is, that the indorsee must have either actual or constructive notice of equities in order to be charged with them. If he receive the paper after maturity, the presumption is conclusive that he had such notice. If he receive it before maturity, the contrary presumption prevails, unless he had actual knowledge, or such as would put him upon inquiry. By what principle of law then, can a party be said to be an innocent holder to-day, and not so to-morrow, when there is no change in the contract, and no new developments as to facts known? Clearly, nothing but this: The contract provides as a penalty for a breach that the holder may elect to have the whole debt due. The defendant suffers the breach, and the plaintiff exercises his right of election. Suppose it would take it back to a date prior to the transfer by Kelley: does it raise any presumption that the plaintiff had any knowledge as to the consideration? It is simply the stipulated consequence of a breach of the contract, and the defendant can take no advantage of it. Again: Suppose for the sake of argument we concede that the effect of the election was to take it back to the time of the breach: does it follow that the breach occurred at the inception of the notes, or even while they were in the hands of Kelley, or H. M. Holden? The contract reads, "And the grantors covenant and agree

that they will pay all taxes, etc., at the time they shall become due by the laws of the state." This clearly contemplates only taxes subsequently to be levied, otherwise it would be a covenant to pay a tax when due by the laws of the state, when in fact by the laws of the state it was already over two years past due. No one would seriously contend that the debt could be elected due for the nonpayment of that tax. But suppose it could: the defendant would be allowed a reasonable time to pay it, and it is. certainly in the power of the grantee to enlarge that reasonable time as much as he likes, it being entirely at his option. The defendant cannot take advantage of his own wrong, and say, "I ought to have paid that tax in twenty-four hours, and as I did not, my default occurred then, and you shall suffer by it to my advantage." If Kelley saw fit to extend the time or not claim a default while he held the note, he had a perfect right to do so; and if he did, then there was no default. H. M. Holden had the same right; and unless he insisted upon its payment, there was no default. The plaintiff had the same right, and consequently there was no default as to taxes and insurance until the election was made by Eli Holden. No one can with a shadow of reason contend that either of the holders had not the right to let the tax run as long as he choose, and then, if he saw fit, pay it and charge it up as a part of the debt; and with no more reason can it be claimed that there would be a breach until declared so by the grantee.

The same reasoning applies to the insurance, but with much greater force—as by the terms of the contract it is at the option of the grantee to take the insurance or not. If he deems the security ample, he may go without it. If otherwise, he may name a company and require insurance. No insurance company was ever named by the grantee in this case.

*W. R. Biddle*, for defendants:

1. Could the defense of usury and want of consideration be made by the defendants against this plaintiff? The answer

alleges that Kelley, the payee in the notes and mortgagee in the mortgage, was the agent of the plaintiff and H. M. Holden, and as such agent was authorized to make this loan to the defendants for the benefit of the plaintiff. The reply does not deny this agency and authority, by affidavit of the plaintiff, his agent or attorney; and the agency of Kelley, and his authority to make this loan, was admitted by the pleadings. Code, § 108.

2. The notes and mortgage were due before they were assigned to plaintiff, and the same defenses could be made against them in his hands that could have been made had the suit been brought by Kelley. The notes and mortgage are one contract, and the provisions thereof inure to the benefit of the defendants as well as to the plaintiff. (8 Kas. 456, 660.) The plaintiff elects that by reason of nonpayment of the interest-note that became due Jan. 14th 1874, and the nonpayment of the taxes that were due and payable upon the mortgaged premises at the time the mortgage was given, and the nonpayment of the taxes due Nov. 1st 1873, and the failure of said defendants to insure the building situated upon the mortgaged premises for the benefit of the mortgagee or his assigns, that the whole sum secured by the mortgage should become due and payable. Now the mortgage provides that at the time of such nonpayments, or failures, or any of them, if the grantee so elect, the whole amount secured by the mortgage should become due. The petition alleges that such failures and nonpayments were made, and the answer admits them; and the time of the nonpayment of the taxes already due on the land when the mortgage was given, and the failure to insure the building on the mortgaged premises, was before Holden became the holder of the notes and mortgage, so that they were all due before that time.

But it may be said, the plaintiff must elect that the notes and mortgage become due by reason of such nonpayment or failure, and that the date of the election is the date or time when the notes and mortgage become due. This might be true if it were not for the plain statements in the mortgage

to the contrary. The election simply refers back to the times of nonpayment, or failure, or both. So that, even though the plaintiff afterward purchased the notes and mortgage, the defense of usury, fraud and want of consideration could be made.

3. The instructions given by the court are in accordance with the cases reported in 8 Kas. 456, 660.

The opinion of the court was delivered by

VALENTINE, J.: The facts presented by the record are as follows: The petition is for the foreclosure of mortgage given by the defendants to one Dean S. Kelley to secure a promissory note for $600 payable five years after date, and also ten semi-annual interest-notes for $36 each. The notes and mortgage were executed July 14th 1873. The mortgage is in the ordinary form except that it contains a covenant as follows:

"And the said grantors hereby covenant and agree that they will pay all taxes and assessments of every nature *that may be levied or assessed* on said premises *at·the time the same shall become due and payable by the laws of this state;* that they will insure or cause to be insured the building on said premises in a responsible insurance company, *to be named by the grantee,* in the sum of three hundred dollars, and assign the policy or cause the same to be made payable in case of loss to the grantee, his heirs or assigns, as his interests may appear, and continue such insurance until said indebtedness shall be paid in full. But in case of the nonpayment of said sum of money, either principal or interest or any part thereof, at the time or times above limited for the payment thereof, or in case of the nonpayment of any taxes *that may be levied or assessed* upon said premises, *at the time the same shall become due and payable as aforesaid,* or in case of the failure of the grantee to insure and keep said property insured and the policy assigned or made payable to the grantee *in manner aforesaid,* then, and at the time of such nonpayment, or failure, *or either of them,* the whole sum hereby secured shall, *if the grantee so elect,* become due and payable, anything in said note to the contrary notwithstanding, and this deed shall then be and at that time become absolute, and notice of such election may be given to the grantor *at any time thereafter.* * * *
And it is further covenanted and agreed, that in case of fail-

ure of the grantor to pay taxes or cause said property to be insured as above provided, the grantee, his heirs or assigns, may, if he elect so to do, pay said taxes, or cause said property to be insured as aforesaid, and the amount of money so paid for taxes or insurance shall become an indebtedness against said grantor and draw interest at the rate of twelve per cent. per annum from the time of such payment."

Kelley transferred said notes and mortgage to one H. M. Holden August 8th 1873, and said Holden transferred the same to the plaintiff afterward and before maturity of said notes or either of them. Defendants did not pay the first interest-note which fell due on January 14th 1874; did not pay taxes for 1873, due November 1st 1873; did not insure property; and did not pay certain back taxes which were due on a portion of said property at the time the mortgage was given; and by reason thereof, and after the maturity of the first interest-note, viz., on February 13th 1874, plaintiff elected to have the whole debt become due, and on that day gave notice thereof to defendants. The answer admits these facts, and sets up that Kelley acted as the agent of H. M. Holden and the plaintiff in making the loan to defendants, and claims a failure of consideration. The testimony shows (and there is no dispute on the point,) that Kelley paid a judgment of foreclosure against Clark upon the premises herein, amounting to $314.36; also, taxes on same land, $114.17; also, for abstract, $5, and for patent, etc., $2.50 — making a total of $436.03, which is all the consideration Clark ever received for the notes; that $150 commission was reserved by Kelley, and that he still has about $14 in his hands belonging to Clark. Defendant admits in open court that there is no evidence that Kelley acted as agent for plaintiff, or H. M. Holden, and hence the only question for this court is, whether the plaintiff obtained the notes and mortgage before or after maturity, and consequently, whether the notes are subject to or freed from equities between Clark and Kelley.

Though the defendant admits that the plaintiff received the notes as above stated and in fact *long prior to the maturity*

*of either of the notes*, yet he claims, and the court below so
instructed the jury, that, "by the election of the plaintiff,
Eli Holden, the entire claim became due before he acquired
an interest in said notes and mortgage," and therefore that
the notes are subject to equities between Clark and Kelley.
Other instructions given by the court were in substance to
the same effect, all hinging upon the theory that, by reason
of the failure of the defendants *to pay the portion of the taxes
unpaid at the time the notes and mortgage were executed*, and
by reason of their failure to insure the property under the
above covenant, the notes became due at the time they were
executed.   As above stated, the election of the plaintiff was
made and notice thereof given to the defendants on the 13th
of February 1874, one month after the maturity of the first
note.   The reason assigned for the above ruling is, that the
covenant reads that, in case of default, "then and at that
time" the entire debt shall, at the election of the grantee,
become due; and as plaintiff elects to have the whole debt
due, it relates back to "that time," viz., the *time of the default*,
which (it is said) was that of the date of the papers.   The
language however of the contract is, that "then and at the
time of such nonpayment, or failure, *or either of them*," the
whole of the debt shall become due "*if the grantee so elect*"—
showing clearly that it was the intention of the parties, not
that the whole of the debt or any part thereof not yet due
should become due upon the happening of any default or
failure—not that the grantee would be required to make his
election at the happening of the first or any intermediate de-
fault, or not at all, but that the grantee might wait until
several defaults had occurred, and then, after the last default,
exercise his option by electing that the debt should become
due, and the debt would then become due, not because of
such default merely, but because of the election by the holder
thereof that it should become due.   The grantee might waive
all the defaults except the last one, and then upon that de-
fault, and because thereof, elect to make the whole of the
debt become due.   And then, by no rule of construction could

the time for the debt to become due be made to relate back to the time of any default which occurred previous to the last one. No election had been made by any holder of the notes or mortgage when either H. M. Holden or the plaintiff Eli Holden purchased the same, and none of the notes had yet become due by their terms. Hence both the Holdens were innocent purchasers and holders of the notes and mortgage. Up to February 13th 1874, when Eli Holden elected that the whole of the debt should be due, he was unquestionably an innocent holder of the notes. Now how can it be said because of such election that he never was an innocent purchaser? Up to January 14th 1874 none of the notes had become due. Then how can it be said that because of said election none of the notes were ever otherwise than due? Evidently all of the notes but the first note became due at the time that Eli Holden elected that they should become due, that is, on said February 13th, and not one of them became due prior to said January 14th. On said January 14th the first note became due, and it had never before that time been due. Then how can it be said after February 13th that it had never been otherwise than due? Can a note become due a second time? Can a note that was always due become due again? Can a note be due and not due at the same time? H. M. Holden purchased said notes on August 8th 1874, and the first default, as we think, was not made sooner than November 1st, 1874. The maker of the notes was to pay the taxes on the property ( in the language of the contract) "that *may be* levied or assessed on said premises at the time the same *shall* become due and payable by the laws of this state;" and "that *may be* levied or assessed on said premises at the time the same *shall* become due and payable as aforesaid;" and he was not required to pay taxes "that" *had been previously* "levied or assessed on said premises," nor was he required to pay such taxes or any taxes "at the time the same" *had* "become due and payable," or that were *then* "due and payable." Besides, the taxes that were then due and payable were paid out of the money for

which the notes were given long before the notes were transferred to H. M. Holden. But is it possible to construe this contract so that Kelley might have elected to consider all of the notes due the very minute they were given? Such certainly could not have been the intention of the parties. The defendants certainly did not want to put it in the power of the holder of the notes to sue on them as soon as they were made when it was stipulated in the principal note and mortgage that the loan should be for five years. The insurance was to be (in the language of the contract) "in a responsible insurance company *to be named by the grantee;*" and the grantee never named any insurance company; so the defendants of course were never in default in this respect. The first default was therefore after H. M. Holden purchased the notes; and therefore, if we should carry the time back when said notes became due to the first default it would still leave H. M. Holden an innocent purchaser and holder of the notes; and if he was an innocent purchaser and holder, then of course the plaintiff must recover. Upon this whole subject we would refer to the able and elaborate brief of counsel for plaintiff in error.

Counsel for defendants in error raises the question that the plaintiff's reply was not verified by an affidavit, and therefore that it did not put in issue some of the allegations of the defendants' answer. The case was tried however in the court below, in the same manner as though it was considered by all the parties that the reply was sufficient, and therefore this court will now treat the case in the same way. (*Bent v. Philbrick,* ante, 190; *Wright v. Bacheller,* ante, 259, and cases there cited.)

The judgment of the court below will be reversed, and cause remanded for a new trial.

All the Justices concurring.